[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 9, 1994, the plaintiff, Gerrity Company, Inc. (Gerrity), filed a three count amended complaint against the defendants, Pace Construction, Inc. (PaceCo), David Pace, Mobile Enterprise Ltd. (Mobile), and St. Paul Mercury Insurance Co. (St. Paul). PaceCo was the general contractor under a contract with the Housing Authority of the City of Bridgeport (Housing CT Page 9341 Authority) to construct public housing units in the Father Panik Village (the Project) in the city of Bridgeport. On July 18, 1991, PaceCo as principal and St. Paul as surety, executed a Payment Bond (Bond) in favor of the Housing Authority as obligee and the State of Connecticut as dual obligee.
On December 13, 1991, PaceCo subcontracted the "rough carpentry" portion of the contract to the defendant Mobile. Thereafter, Mobile subcontracted with the plaintiff, Gerrity, to supply the lumber for the Project. In connection therewith, Mobile filed an Application for Credit with Gerrity. Gerrity refused to extend credit to Mobile unless PaceCo guaranteed payment. As a result, David Pace signed the guarantee provision in Mobile's Application for Credit and added the following language: "This guarantee is only valid for materials delivered and signed for by representatives of Mobile Enterprises LTD, and their work at Father Panik Village. This guarantee applies only to Father Panik Village. This applies to material delivered to job site only- (no yard pick up!). Must also be signed by a Pace representative." The guarantee was also signed by David Pace in his individual capacity.
PaceCo also filed an Application for Credit with Gerrity which was signed by David Pace in his capacity as Project Manager for PaceCo. The guarantee provision was signed by David Pace in his individual capacity and added the following language: "This Guarantee is only valid for materials delivered and signed for by representatives of Mobile Ent., and their work for Father Panik Village. This applies only to Father Panik Village."
On January 20, 1992, PaceCo, Mobile and Gerrity entered into a Joint Check Agreement which provided, inter alia, that "all money now or hereafter to become due to Mobile Enterprises Ltd. for materials supplied by Gerrity Inc. . . . shall be paid jointly to Gerrity Co. Inc. and Mobile Enterprises, Ltd. Pace Construction Inc. agrees that payment shall be . . . in the form of a check payable to Gerrity Co. Inc. and Mobile Enterprise, Ltd. and that the check shall be mailed directly by Pace Construction Inc. to Gerrity Co. Inc., after endorsement by Mobile."
Gerrity commenced delivery of lumber to the Project in late January of 1992. Gerrity invoiced Mobile who, in turn, invoiced PaceCo for payment pursuant to the Joint Check Agreement. Gerrity received payment for all deliveries made to the Project through CT Page 9342 May 4, 1992, notwithstanding the fact that 30 out of the 54 delivery invoices were not signed by a PaceCo representative.
During the course of the Project, materials and supplies — including lumber — were stolen from the Project site. PaceCo received $52,314.00 in insurance proceeds which the parties agreed to place in escrow pending the outcome of this case and a companion case filed in the New Haven Superior Court.
On or about May 5, 1992, a dispute arose between Gerrity and PaceCo. PaceCo refused to pay Gerrity for any further deliveries until it conducted an internal investigation. Gerrity continued delivering lumber to the Project until late June of 1992. From May 5, 1992 until June 29, 1992, Gerrity delivered $100,379.82 worth of lumber to the Project for which it received only partial payment.
The first count seeks payment on the Bond, interest, and attorney's fees pursuant to General Statutes § 49-42[1]. The second count seeks payment pursuant to the guarantees. The third count, alleging unjust enrichment, was dismissed by the court.
Count One
The defendants argue that Gerrity cannot enforce the Bond pursuant to General Statutes § 49-42 because the Bond was not issued pursuant to General Statutes § 49-41 "for the construction, alteration or repair of any building or public work of the state or of any subdivision thereof."[2] The defendants rely upon Quinones v. New Britain Housing Authority, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 370093 (October 26, 1992, Wagner, J.) wherein the court noted that General Statutes § 8-44 fails to expressly designate municipal housing authorities as "political subdivisions of the state." The defendants contend that since the Bond was not issued pursuant to General Statutes § 49-41, and cannot be enforced pursuant to General Statutes § 49-42, the terms of the Bond control. The defendants further argue that Gerrity's notice of claim was untimely because it was not filed within ninety (90) days of the last delivery of lumber as provided for by the terms of the Bond.[3] Gerrity filed its notice of claim on October; 17, 1992; one hundred eight (108) days after its last delivery of lumber to the Project. CT Page 9343
Gerrity argues that the Bond was issued pursuant to General Statutes § 49-41 and that it has complied with the requirements of General Statutes § 49-42 in commencing this action. Thus, the dispositive issue is whether the contract between the Housing Authority and PaceCo was a `public works' contract.
General Statutes § 49-41 provides in pertinent part: "(a) Each contract for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof shall include a provision that the person to perform the contract shall furnish a bond in the amount of the contract . . ."
"Section 49-41 is a remedial statute enacted to protect workers and materials suppliers on public works projects who cannot avail themselves of otherwise available remedies such as mechanic's liens." Herbert S. Newman Partners v. CFCConstruction Ltd. Partnership, 236 Conn. 750, 757, 674 A.2d 1313
(1996). "Because [t]he statutory requirement of a bond is designed to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be sure of payment of their just claims, without defeat or undue delay . . . such statutory provisions are to be liberally construed." (Citations omitted; internal quotation marks omitted.) Okee Industries, Inc. v. National Grange Mutual Ins.Co., 225 Conn. 367, 373, 623 A.2d 483 (1993).
General Statutes § 8-40, which authorizes the creation of city housing authorities, provides in part: "In each municipality of the state there is created a public body corporate and politic to be known as the `housing authority' of the municipality."[4]
General Statutes § 8-44 provides in part: "An authority shall constitute a public body corporate and politic, exercising public powers . . . including the following enumerated powers . . . to make and execute contracts and other instruments necessary or convenient to the exercise of the powers of the authority . . . to prepare, carry out, acquire, lease and operate housing projects and to provide for the construction, reconstruction, improvement, alteration or repair of any housing project or any part thereof either directly or in the form of loans. . . ."[5]
The fact that General Statutes § 8-44 fails to expressly designate a city housing authority as a political subdivision of the state does not preclude this court from finding that the CT Page 9344 contract between the Housing Authority and PaceCo was a `public works' contract pursuant to General Statutes § 49-41. Whether a particular construction project qualifies as a "public work" is determined on a case-by-case basis. L. Suzio Concrete Co. v. NewHaven Tobacco, Inc., 28 Conn. App. 622, 629, 611 A.2d 921 (1992).
General Statutes § 8-40 and 8-44 provide that a city housing authority is a public body corporate and politic,exercising public powers including the power to make and execute contracts to prepare, carry out, acquire, lease and operate housing projects and to provide for the construction, reconstruction, improvement, alteration or repair of any housing project. The contract between the Housing Authority and PaceCo, to replace public housing units, was entered into by a public body for the construction of buildings for public use and with the intention of serving the interests of the general public. In addition, the Bond was issued in favor of the State as dual obligee and the funding for the Project came from public funds provided by the United States Department of Housing and Urban Development. All of these factors lead this court to conclude that the contract was a "public works" contract within the meaning of General Statutes § 49-41 and that Gerrity may enforce the contract pursuant to General Statutes § 49-42.
Gerrity has demonstrated to the court that it delivered $100,739.82 worth of lumber to Father Panik Village between May 5, 1992 and June 29, 1992, but received only $8,877.71 in payment from PaceCo. Gerrity complied with the notice requirements of section 49-41 by filing a notice of claim with St. Paul on October 17, 1992, one hundred eight (108) days after its last delivery of lumber to the Project. The court, therefore, finds that the plaintiff is entitled to recover from the defendant, St. Paul, the sum of $91,502.11 on the first count of the plaintiff's amended complaint.
Gerrity also seeks interest, and attorney's fees pursuant to General Statutes § 49-41.[6] The Bond does not specify an interest rate. As a result, the court will award interest pursuant to General Statutes § 37-3a, in the amount of ten (10) percent per annum. Interest shall accrue from October 17, 1992, the date St. Paul received notice of Gerrity's claim, until the date of judgment. The court cannot conclude that St. Paul's denial of liability or its defense to this claim was without substantial basis in fact or law. Accordingly, the court denies Gerrity's request for attorney's fees. CT Page 9345
The court further finds that the plaintiff should recover from the defendants, Mobile, David Pace and Pace Construction, on the second count pursuant to Mobile's application for credit with Gerrity which application was guaranteed by both David Pace, individually, and Pace Construction. In fact, it is to be noted that David Pace guaranteed both applications for credit and is, accordingly, liable in his individual capacity.
In conclusion, the court finds for the plaintiff against all four defendants for the plaintiff to recover the sum of $91,502.11. As previously recited, the defendant, St. Paul, is liable for interest from the date it received Gerrity's notice of claim (October 17, 1992), until the date of judgment at the rate of ten (10) percent per annum. As to the defendants, Mobile, Pace Construction and David Pace, interest is awarded the plaintiff as against these defendants at the rate of twelve (12) percent from June 29, 1992, together with attorney's fees of fifteen (15) percent or $13,725.31, and costs of suit.
GROGINS, J.